# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IARINA SERBAN, individually and on behalf of a class of similarly situated individuals, ) ) ) Plaintiff, ) ) v. ) ) CARGURUS, INC., a Delaware Corporation, ) ) Defendant. ) | No. 16 C 2531 Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiff Iarina Serban, on behalf of herself and all others similarly situated, filed this class action lawsuit alleging that Defendant CarGurus, Inc. ("CarGurus") violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227 *et seq.*, by sending text messages to Serban and other putative class members without their consent via an automatic telephone dialing system ("ATDS"). After conducting discovery regarding CarGurus' text messaging functionalities, CarGurus filed a motion for summary judgment. Because the undisputed facts establish that, under the TCPA, CarGurus does not qualify as the sender of the text message Serban received, the Court grants CarGurus' motion for summary judgment.

## BACKGROUND[1]

CarGurus operates a car shopping service through its website, cargurus.com. CarGurus designed its website and text messaging software in-house. On the website, users can search listings of vehicles for sale using specific parameters, including geographic location, make,

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Material Facts. All facts are taken in the light most favorable to Serban, the non-movant.

model, or year.² When a user selects a specific car listing, the listing page includes, among other things, a "Send to Phone" link. This link allows users to have information about that specific car listing sent in a text message to a phone number the user inputs. This "Send to Phone" process is the only way in which a user may send information from a vehicle listing displayed on cargurus.com through the website by text message to a user's cellphone.³

The text message process works as follows: A user clicks the "Send to Phone" link on a specific car listing's page. When the "Send Listing to Phone" dialog box is displayed, the user enters the cellular telephone number to which the user wants to have the listing information sent. The user then clicks the "Send" icon in the dialog box. The user is not required to confirm the telephone number before a message is sent.

CarGurus' software then initiates a process by which CarGurus texts information about that particular vehicle to the cellular telephone number that the user inputted into the dialog box. Specifically, CarGurus' text messaging software automatically populates a message template with information from the specific listing the user had reviewed. The website user has no control over the content of the text message, aside from having chosen the car about which to send information. The text message includes information about that specific vehicle listing, in accordance with the "Send Listing to Phone" dialog box that informed the user that "[t]his phone

---

² The user interface of the CarGurus website has changed slightly since 2015, but the information solicited from users to search for vehicles has remained substantially and operationally unchanged.

³ CarGurus does offer website users several other text messaging functionalities. For example, to write reviews of car dealerships on the website, users must verify that they actually contacted the dealer regarding a car. To do so, the user enters his or her phone number, after which CarGurus confirms that the dealership received a call from that phone number. After receiving such confirmation, CarGurus sends the user a text message containing a verification code, which the user then must enter on the CarGurus website to review the dealership. CarGurus also allows users to send text messages to car dealerships through the website and receive single dealer promotional coupons by text message. Finally, CarGurus uses two-factor authentication when its employees attempt to log onto CarGurus' operating system remotely, texting verification codes to its employees.

number will only be used to send you this listing." Doc. 71 ¶ 55. CarGurus' software performs a "prefix validiation" on the number the website user inputted to determine the validity of the first three digits. If the software determines the number is invalid, the software does not send the text messages. CarGurus' software also tracks message utilization by the IP address of the source of the request, so that if more than a certain number of requests come from a single IP address in a given period of time, the software blocks future message requests from that IP address automatically. Specifically, a user can only send ten message requests in a ten-minute period.

All text messages sent using CarGurus' "Send to Phone" feature come from CarGurus' licensed shortcode, 64142. CarGurus uses Twilio, an SMS aggregator, to send the text messages. Twilio is a platform that bridges connections over cellular service networks and determines to which cellular service carrier each telephone number belongs and directs the message through that carrier to the intended text recipient. Using Twilio allows CarGurus to send text messages through a single connection to various cellular service vendors. CarGurus connects to Twilio through Twilio's application program interface ("API") and internally developed its own source code to integrate with the API to send text messages.

CarGurus has a unique security key which it uses to transmit and authenticate its requests to Twilio. In order to generate a text message, CarGurus' text message software sends a web request to Twilio. The request includes the originating phone number (CarGurus' shortcode), the recipients' cellphone number, and the content of the message. CarGurus temporarily stores cellphone numbers in its webservers' memory and has a historical SMS log that includes the recipient phone number, the content of the message, the date and time of the message, and the person info ID if the user sent the message while he or she was logged into a cargurus.com

account. CarGurus has not used the historical SMS log to send any additional messages to the numbers contained therein.

On July 3, 2014, a cargurus.com website user registered an account under the name Donnavee Ennis. CarGurus assigned Ennis a "person info ID" of 2800752. She listed 1-336-880-5055 as her telephone number. Between August 29, 2014 and July 30, 2015, a person logged into Ennis' account used the "Send to Phone" function on CarGurus' website to send twelve text messages about cars listed on the website. Eleven of these text messages were sent to Ennis' phone number, 1-336-880-5055. On July 30, 2015, a person logged into Ennis' account used the "Send to Phone" function to send a listing to 1-336-880-5505, transposing two of the digits in Ennis' phone number. This number belonged to Serban.

Serban received the following text message from CarGurus' shortcode, 64142:

> CarGurus Request.
> 2006 Jaguar XK-Series
> XK8 Convertible- $16,595 (Fair Deal):
> http://cargur.us/3K5kx

Doc. 71 ¶ 84. On July 30, 2015, over 6,000 other text messages were sent from CarGurus' shortcode concerning other cars for sale on cargurus.com.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265

(1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

The TCPA prohibits the use of an ATDS to call or send text messages to cellular telephones without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii); *see In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, ¶ 165 (2003) (TCPA applies to both "voice calls and text calls to wireless numbers");[4] *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009 (N.D. Ill. 2010) ("[T]he Court agrees with the FCC's interpretation that § 227 of the TCPA applies to text messages."). In its ruling on CarGurus' motion to dismiss, the Court found that Serban had sufficiently alleged that CarGurus sent the text message using an ATDS so as to proceed to discovery. Doc. 40. Now that the parties have conducted discovery on CarGurus' text messaging functionalities, CarGurus renews its arguments that Serban cannot establish a TCPA claim because (1) CarGurus did not send or initiate the text message that Serban received, and (2) an ATDS did not send the text message Serban received. The Court need only address the first argument.

CarGurus argues that Serban cannot prevail on her claim because the evidence demonstrates that CarGurus did not send the text message at issue in this case. In order to be

---

[4] The FCC's final orders bind the Court under the Hobbs Act. *See CE Design Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446–50 (7th Cir. 2010); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 734 (7th Cir. 2014).

liable, CarGurus must have made or initiated the text message. 47 U.S.C. § 227(b); 47 C.F.R. § 64.1200(a)(1) (interpreting the statutory phrase "make any call" to mean "initiate any telephone call"). But the TCPA and the FCC's rules do not define "make" or "initiate." *In re: Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2015 Order"), 30 FCC Rcd. 7961, ¶ 29 (July 10, 2015).[5] Instead, FCC guidance indicates the Court should "look to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it." *Id.* ¶ 30.

In considering whether CarGurus made or initiated the text message at issue here, the Court is guided by the FCC's determinations in the 2015 Order with respect to three different cell phone applications ("apps").[6] In the case of YouMail, "where the app user determines whether auto-reply messages are sent in response to a caller leaving a message for the app user," the FCC found that the app user, not the app, was the sender of the messages where the app "exercises no discernible involvement in deciding whether, when, or to whom an auto-reply is sent, or what such an auto reply says, nor does it perform related functions, such as pre-setting options in the app, that physically cause auto-replies to be sent." *Id.* ¶¶ 32, 35 (noting that "app users choos[ing] whether to send text messages and . . . their involvement in the process of creating and sending the messages in response to received calls are key factors in determining

---

[5] The U.S. Court of Appeals for the D.C. Circuit is currently considering a case, *ACA International v. FCC*, No. 15-1211 (D.C. Cir. argued Oct. 19, 2016), that seeks judicial review of the 2015 Order. *See Kotlyar v. Univ. of Chicago*, No. 17 C 4729, 2017 WL 5911287, at *4 (N.D. Ill. Nov. 30, 2017) (granting stay in TCPA case involving issues of revocation of consent where D.C. Circuit's guidance could impact resolution of case). But *ACA* does not challenge the aspects of the 2015 Order on which the Court relies here.

[6] Although the 2015 Order addressed text messages sent from apps and the text message at issue here was sent from a website, the Court does not see any meaningful difference between the use of an app versus the use of a website to send the messages. CarGurus also notes that it has an app, but the record here does not include any evidence as to how the app functions.

6

whether the app provider or the app user is the initiator of the call for TCPA purposes"). The FCC highlighted the fact that YouMail did not "control the recipients, timing, or content" of the messages. *Id.* ¶ 33. Similarly, in the case of the TextMe app, the app allowed users to send invitational text messages to contacts by (1) tapping a button that read "invite your friends," (2) choosing to invite all friends or individually selecting contacts, and (3) pressing another button to send the text. *Id.* ¶ 36. Although TextMe controlled the content of the text message, the FCC did not find this dispositive, and instead considered "the choices [the app user] makes in determining whether to send an invitational message, to whom to send an invitational message, and when that invitational message is sent." *Id.* ¶ 37. The FCC concluded that "the app user's actions and choices effectively program the cloud-based dialer to such an extent that he or she is so involved in making the call as to be deemed the initiator of the call." *Id.* ¶ 37.

By contrast, in the case of Glide, the FCC found that where the app "automatically sends invitational texts of its own choosing to every contact in the app user's contact list with little or no obvious control by the user," with the "app user play[ing] no discernible role in deciding whether to send the invitational text messages, to whom to send them, or what to say in them," the app is the maker or initiator of the text messages. *Id.* ¶ 35.

Here, the user of the CarGurus website chooses to send a message to a specific phone number using CarGurus' "Send to Phone" function. In order to send the message, the user must navigate to a vehicle listing page, click on the "Send to Phone" function, enter a telephone number, and then click "Send." CarGurus' software then initiates a process by which CarGurus, through Twilio, texts information about that particular vehicle to the cellular telephone number that the user inputted. The user chooses which vehicle listing to send to the specified number;

7

and although CarGurus has prewritten the message, CarGurus merely fills in the details about the specific vehicle upon selection.

While CarGurus controls the content of the text message, this factor is not dispositive. *See id.* ¶ 37 (finding that the fact that TextMe controlled the content of the invitational text message a "reason for concern" but nonetheless concluding that the "app user's actions and choices effectively program the cloud-based dialer to such an extent that he or she is so involved in the making of the call as to be deemed the initiator of the call"). Moreover, the user decides which listing to send, meaning that the user determines the content that populates the generated message. *Cf. id.* ¶ 35 (app user had "no discernible role in deciding . . . what to say in" the messages). And the fact that the user makes this and other affirmative choices in sending the text message leads the Court to conclude that the user, and not CarGurus, initiated the text messages. Specifically, Serban received the text message at issue because a CarGurus user went to the CarGurus website, selected a specific listing, clicked on the "Send to Phone" button, entered a phone number (erroneously, it turns out), and clicked the "Send" button. Serban received the text message only because the user clicked "Send." This process is similar to that used by the TextMe app, where the FCC found the user made affirmative choices in "whether to send an invitational message, to whom to send an invitational message, and when that invitational message is sent."[7] *Id.* ¶ 37; *see also Warciak v. Nikil, Inc.*, No. 16 C 5731, 2017 WL 1093162, at

---

[7] The Court acknowledges that CarGurus' software allows CarGurus to delay the sending of its text messages depending on the number of text messages a user has sent in the span of a certain amount of time, but fundamentally, this does not change the analysis that the user generally determines the timing of the messages because without the user clicking send, the message would not be sent. *See Warciak*, 2017 WL 1093162, at *4 (finding that "the fact that any number of technological processes must occur for a person to make a call or send a text—processes over which the app user has no control—does not distinguish [the app] from a normal person-to-person text" where "[a]ll telephone or smart phone users are dependent upon telecommunications carriers to provide the mechanism for texts or phone calls to be sent and received"). There is no evidence in the record that, in this case, CarGurus delayed the delivery of the message Serban received.

\*3 (N.D. Ill. Mar. 23, 2017) (finding that user initiated text messages where user had to take several affirmative steps to generate text message through the app, deciding whether the text message was sent and to whom); *Reichman v. Poshmark, Inc.*, No. 16-cv-2359 DMS (JLB), 2017 WL 2104273, at \*3 (S.D. Cal. May 15, 2017) (the app user, not the app, made calls within the meaning of the TCPA, where absent the app user taking certain affirmative steps, the text message would not have been sent). Likewise, CarGurus' messaging functionality is similar to YouMail's, which the FCC noted was a "reactive and tailored service; in response to a call made to the app user, YouMail simply sends a text message to that caller, and only to that caller." 2015 Order ¶ 32. Like YouMail and TextMe, instead of playing an active role in choosing what content to send to which numbers, CarGurus "merely has some role, however minor, in the causal chain that results in the making of a telephone call." *Id.* ¶ 37.

Serban relies on *Nunes v. Twitter, Inc.*, 194 F. Supp. 3d 959 (N.D. Cal. 2016), to argue that CarGurus, and not the user of CarGurus' website, is the maker or initiator of the text message Serban received for TCPA purposes. In *Nunes*, the plaintiff had a recycled cell phone number and the previous owner of the number had signed up to receive tweets by text. *Id.* at 961. The plaintiff began receiving these text messages from Twitter and filed suit. *Id.* Twitter argued that the previous owner initiated all the text messages the phone number received in the future, but the court rejected this argument, noting that "when someone signs up to receive a call from someone else in the future, he is not 'making' that call when it comes in." *Id.* at 962. In *Nunes*, because the previous owner signed up to receive messages *in the future*, it would stretch the meaning of the words "make" or "initiate" to find that the previous owner made the calls when they came in days, weeks, or years later. *Id.* But here, the parties agree that CarGurus does not have the functionality for users to subscribe to have vehicle listings texted to them in

9

the future, and the only manner by which individuals can receive texts about vehicle listings is through the "Send the Phone" link where users take affirmative steps to send listings to specific phone numbers, distinguishing this situation from that in *Nunes*.

The Court also does not find Serban's other arguments persuasive. The fact that Twilio's corporate representative characterized CarGurus as the sender of the text messages does not carry weight under the TCPA, where Serban has not established why Twilio's corporate representative's interpretation of the term "sender" should be considered legally dispositive. And while the Court considers Serban's expert's opinion that CarGurus makes and initiates the text messages because the user only provides a telephone number, this opinion is flawed in light of the FCC's guidance. The fact that CarGurus owned the shortcode number through which the text message was transmitted also does not render CarGurus the sender, with this being just another step in the causal chain of sending the text message. *See Warciak*, 2017 WL 1093162, at *2 (noting that text message was sent from defendant's phone number without ascribing any relevance to this fact); *Reichman*, 2017 WL 2104273, at *4–5 (refusing plaintiff's request for additional discovery into the ownership of phone numbers from which text messages were sent, finding that plaintiff did not "show how the requested information is necessary to determine the extent of the app user's involvement in sending text messages"). Finally, Serban argues that CarGurus determines to whom the text messages are sent because it has the ability to decide not to send messages to cellular subscribers on certain networks. But Serban focuses on the wrong level of the inquiry; the relevant question is who initially determines to which telephone number a text message will be sent, not the back end technological considerations of whether the message can be transmitted to that number. The answer to that inquiry is the user of CarGurus'

website, not CarGurus.[8] *See* July 2015 Order ¶¶ 32, 36 (finding that the app user was the maker of text messages where, among other things, the user had the ability to select the recipients of the messages).

Therefore, the undisputed facts before the Court establish that, under the TCPA, CarGurus was not the maker or initiator of the text message Serban received. Because Serban cannot prevail on a required element of her claim, the Court grants summary judgment for CarGurus.[9]

## CONCLUSION

For the foregoing reasons, the Court grants CarGurus' motion for summary judgment [69]. The Court enters judgment for CarGurus and terminates this case.

Dated: March 12, 2018

_____
SARA L. ELLIS
United States District Judge

---

[8] Additionally, as CarGurus points out in reply, in this specific case, CarGurus did not block the message to Serban, demonstrating that it did not exercise control over the recipient of the message.
[9] Because Serban cannot establish that CarGurus made or initiated the text message at issue, the Court need not address CarGurus' alternative argument that an ATDS was not used to send the text message at issue.

11